IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 04-cv-01682-RPM

WWC HOLDING CO., INC.,

    Plaintiff,

v.

GREGORY E. SOPKIN,
POLLY E. PAGE, and
CARL MILLER,
in their Official Capacities as the Commissioners of the
Public Utilities Commission of the State of Colorado,

    Defendants.

MEMORANDUM OPINION AND ORDER

Matsch, Senior Judge

    The plaintiff WWC Holding Co., Inc. ("Western Wireless"), a wireless telecommunications services provider, seeks declaratory and injunctive relief against the defendants, Commissioners of the Public Utilities Commission of Colorado ("Commission"), for imposing conditions to granting Western Wireless' application to be designated as an "eligible telecommunications carrier" ("ETC") under the Telecommunications Act of 1996, 47 U.S.C. §§ 151 *et seq.* ("Act"). The defendants are the individual Commissioners sued only in their official capacities on claims that the conditions imposed are preempted under the Act (Counts I-IV), violate Federal statutory and constitutional law for which the plaintiff seeks a remedy under 42 U.S.C. § 1983 (Count V), and exceed statutory authority granted under C.R.S. §§ 40-1-103 &

40-15-401 (Count VI). Subject matter jurisdiction for Counts I through V is claimed and found pursuant to 28 U.S.C. §§ 1331,1337, and 1343(a) and Count VI pursuant to 28 U.S.C. § 1367. The plaintiff filed a motion for summary judgment on January 10, 2005. From the papers submitted and the January 17, 2006 hearing, the factual context giving rise to the legal questions presented is not in dispute.

## Background

The Telecommunications Act of 1996, which amended the Communications Act of 1934, 47 U.S.C. §§ 151 *et seq.*, was enacted "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." *Telecommunications Act of 1996,* Pub. L. No. 104-104, 110 Stat. 56 (1996). *See also Qwest Corp. v. F.C.C.,* 258 F.3d 1191, 1196 (10th Cir. 2001). Affordable, quality telecommunications services for all Americans are referred to as "universal service" and include, among other services, local telephone service and access to emergency, directory-assistance, and long-distance services. 47 U.S.C. § 254(c); 47 C.F.R. § 54.101; *Qwest Commun. Intern., Inc. v. F.C.C.,* 398 F.3d 1222, 1226 (10th Cir. 2005); *Qwest Corp. v. F.C.C., supra* at 1195.

To make universal service available to all users, including customers in rural, insular, and high cost areas, the Act created an explicit funding mechanism.[1] Unless exempt, every telecommunications carrier providing interstate telecommunications services must contribute to a

---

[1] Previously, universal service was achieved through explicit payments and implicit subsidies such as geographic rate averaging. By averaging local telephone rates across the state, "high-density (urban) areas, where costs are typically lower, subsidize low-density (rural) areas." *In the Matter of Federal-State Joint Bd. on Univ. Serv.,* Report and Order,12 F.C.C.R. 8776, 8784 (1997).

Federal Universal Service Fund ("USF") to support universal service. 47 U.S.C. §§ 254(d) & (e). The Universal Service Administrative Company ("USAC") bills contributors, collects contributions, and disburses universal service support funds. 47 C.F.R. § 54.702. Contributions from telecommunications carriers are determined by the USAC using a quarterly contribution factor calculated by the FCC.[2] 47 C.F.R. § 54.709. Subject to a certain limit, these carriers, in turn, may recover their contribution costs through charges to end users, and may do so through a line item on a customer's bill. 47 C.F.R. § 54.712.

Support from the USF to provide service for high-cost consumers is available to a common carrier who is designated as an "eligible telecommunications carrier" ("ETC") in the service area for which the designation is received. 47 U.S.C. §§ 254(e) & 214(e). Common carriers subject to the jurisdiction of a state commission are designated as ETCs by that state commission under 47 U.S.C. § 214(e)(2) while common carriers who are not subject to the jurisdiction of a state commission are designated as ETCs by the FCC under 47 U.S.C. § 214(e)(6).

The requirements for ETC designation in a requested service area are met if the applicant: 1) is a common carrier; 2) can offer each of the designated services identified in 47 C.F.R. § 54.101; and 3) will advertise its services. 47 U.S.C. § 214(e). To serve an area already served by a rural telephone company, the designation of the applicant as an ETC must serve the "public interest." *Id*. The "service area" is the geographic area established by a state commission or the

---

[2]Generally, the quarterly contribution factor is calculated "based on the ratio of total projected quarterly expenses of the universal service support mechanisms to the contributors' total projected collected end-user interstate and international telecommunications revenues, net of projected contributions." 47 C.F.R. § 54.709.

3

FCC, as the case may be, where the ETC is required to comply with universal service obligations and is eligible to receive universal service support. 47 U.S.C. § 214(e)(5). Generally, in an area served by a rural telephone company, it means the rural company's "study area," the area used by the FCC to determine support for rural telephone companies. 47 U.S.C. § 214(e)(5).

The Federal universal service support funds can only be used "for the provision, maintenance, and upgrading of facilities and services" in the service area where the carrier is designated as an ETC and state commissions must file an annual certification to that effect. 47 U.S.C. § 254(e); 47 C.F.R. §§ 54.313 & 54.314. Competitive ETCs serving the service area of an incumbent local exchange carrier ("ILEC") receive the same per-line amount of support that the ILEC would receive for serving the same customer.[3] 47 C.F.R. § 54.307. Currently, non-rural carriers' support is based on a forward-looking economic cost model of providing services designated for universal service support while rural carriers' support is based on their embedded or historical costs. Kathleen Q. Abernathy, 3 *J. Telecom. & High Tech. L.* 409, 415-416 (2005); *In the Matter of Federal-State Joint Bd. on Univ. Serv.*, Report and Order, 12 F.C.C.R. 8776, 8934-8936 (1997) ("1997 Report and Order"); *In the Matter of Federal-State Joint Bd. on Univ. Serv.*, Recommended Decision, 19 F.C.C.R. 4257, 4259, 4294-4295 (2004); *In the Matter of Federal-State Joint Bd. on Univ. Serv.*, Report and Order, 20 F.C.C.R. 6371, 6376 (2005) ("2005 Report and Order"). Although limiting federal subsidy support to a single connection per

---

[3]Although the FCC has sought review and comment relating to the basis of support for competitive ETCs and whether that should be modified, no modifications have been made to date. *Federal-State Joint Bd. on Univ. Serv. Seeks Comment on Certain of the Commission's Rules Relating to High-Cost Univ. Serv. Support,* Public Notice, 2004 WL 1827242 **9-10 (F.C.C. Aug. 16, 2004); *In the Matter of Federal-State Joint Bd. on Univ. Serv.*, Report and Order, 20 F.C.C.R. 6371, 6376 (2005).

customer has been considered, there is currently no limit on the number of "carriers [that] may receive support in high-cost areas, [or] the number of supported connections each carrier provides to a customer." 3 *J. Telecom. & High Tech. L., supra* at 416. *See* 2005 Report and Order, *supra* at 6376.

Colorado has created its own state universal service fund, the Colorado High Cost Support Mechanism, with contributions from providers of intrastate telecommunications service to the public. 4 Colo. Code Regs. § 723-41-7.1. A carrier may be eligible to receive this state funding if it is designated as an "eligible provider" or "EP" under 4 Colo. Code Regs. §§ 723-41-1 *et. seq.* and C.R.S. § 40-15-208. A carrier may be designated as a federal ETC without being designated as a state EP. In Colorado, the Commission is responsible for designating ETCs and EPs.

## Facts

Western Wireless is a "telecommunications carrier" as that term is defined in the Act and provides commercial mobile radio services ("CMRS") in Colorado and other states. Consistent with the manner in which wireless carriers operate, Western Wireless bundles intrastate and interstate services together in service packages which do not distinguish between or separately bill for interstate and intrastate calls.

In May 2001, upon applications filed by Western Wireless, the Commission designated Western Wireless as a federal ETC and state EP for certain areas ("WWI Areas") in Colorado pursuant to a Stipulation and Settlement Agreement ("Stipulation") entered into by Western Wireless, the Office of Commission Staff ("Staff"), and the Office of Consumer Counsel. (Record Vol. 5 at 001103-1163.) Under the Stipulation, as relevant to this case, the parties agreed to the

following:

    1.    the Stipulation has no legal effect outside of these proceedings and no precedential effect (Record Vol. 5 at 001107 & 001118);

    2.    Western Wireless will provide its ETC and EP universal service offerings in Colorado pursuant to the Stipulation (including attachments) and in accordance with a written Customer Service Agreement which contains Terms and Conditions in the form contained in Attachment 5 to the Stipulation (Record Vol. 5 at 001113 & 001129-1148);

    3.    Western Wireless' Operating Procedures applicable to its universal service offering in Colorado are contained in Attachment 6 of the Stipulation (Record Vol. 5 at 001113 & 001149-1160); and

    4.    Western Wireless will price its initial basic universal service ("BUS") offering in Colorado as described in the Service Description, Attachment 7 to the Stipulation, stated to be $14.99, excluding taxes and governmental assessments (Record Vol. 5 at 001113 & 001161-1163).

On February 14, 2003, Western Wireless filed an application with the Commission for designation as a federal ETC, but not a state EP, in other areas of Colorado ("WWII Areas"). These areas are served by CenturyTel of Eagle, Inc. ("CenturyTel"), the incumbent local exchange carrier. Western Wireless did not submit a BUS plan for review or approval. The Staff, CenturyTel, Colorado Telecommunications Association, Inc., and N.E. Colorado Cellular, Inc. ("NECC") intervened in the proceedings on Western Wireless' second application and a hearing was held. At that time, the Commission consisted of Commissioners Polly Page, Jim Dyer, and

Gregory E. Sopkin, the Chairman.

By Decision dated May 26, 2004, the Commission, acting through Commissioners Page and Dyer, conditionally granted Western Wireless' application as follows:

> . . . [B]ased on the . . . findings regarding our legal authority and the public interest requirements of CMRS, ETC providers, and in concert with our previous decisions granting ETC status to rural wireless providers, we find that designating Western Wireless as an ETC is in the public interest. However, this is only when conditioned with important Commission standards including affordability and consumer protection. Specifically, we will grant Western Wireless' application and designate Western Wireless a federal ETC subject to the requirement that it submit the pricing plans it intends to offer in the five wire centers for Commission approval. We further determine that Western Wireless grant of ETC status will be subject to the terms and conditions provided in the WWI Stipulation regarding consumer protection.

(Record Vol. 3 at 000702, ¶ 113.)

Western Wireless had contended that the Commission's role was "to designate carriers, not approve offerings," and that it should be designated as an ETC without complying with the "consumer protection or affordability rules" recommended by the Staff. (Record Vol. 3 at 000659 & 662.) NECC, one of the intervenors, argued that the Staff's proposed conditions should be rejected because ILEC-style regulations are inappropriate for competitive ETCs. NECC also argued that the FCC has preempted many of the ILEC-style regulations present in the WWI Stipulation, rate and entry regulations are preempted, and requiring CMRS ETCs to submit individual rate plans to the Commission for approval amounts to an unlawful regulation of CMRS carrier rates. (Record Vol. 3 at 000665-667.)

The Commission agreed with its Staff and found that designating Western Wireless as an ETC is in the public interest "only when conditioned with important Commission standards including affordability and consumer protection." (Record Vol. 3 at 000674, ¶57.) The

7

Commission found that Western Wireless should be required to tender an affordable BUS offering as a condition to receiving ETC status and the attendant public subsidy. (Record Vol. 3 at 000676, ¶61.) The Commission found that 47 U.S.C. § 332(c)(3)(A), which preempts states from regulating the entry of or rates charged by CMRS providers, did not preclude it from exercising its jurisdiction under 47 U.S.C. §§ 254(i) and 214(e) to impose these requirements and, further, requiring the showing of affordability was not rate-making as contemplated under § 332(c)(3)(A). (Record Vol. 3 at 000682-686.) The Commission did not identify any criteria or standard to determine affordability but merely stated that Western Wireless would be required to provide sufficient information to demonstrate that the rates it intended "to charge for its BUS offering are just, reasonable, and affordable." (Record Vol. 3 at 000685, ¶76.)

The Commission found the standards set out in the WWI Stipulation were reasonable, did not constitute a barrier to entry, and that its requirements were consistent with the Act and Colorado law. (Record Vol. 3 at 000699, ¶ 107.) The Commission also found that if the conditions on approval of Western Wireless' application were not imposed, there was a potential for discriminatory service offerings by Western Wireless between and among its own customer base and there would be a discriminatory impact upon other ETC providers who obtained ETC status in exchange for accepting terms and conditions substantially the same as those contained in the WWI Stipulation. (Record Vol. 3 at 000699-700.)

Chairman Sopkin dissented. (Record Vol. 3 at 000706-718.) While he agreed that conditioning the receipt of federal subsidies with quality service protection is rational, he believed that rate regulation is inappropriate as a matter of policy and is prohibited because federal law expressly preempted any state attempt to do so. (Record Vol. 3 at 000708-709.) Chairman

Sopkin concluded that "[t]he ability to reject a rate offering is, of course, rate regulation. . . ." (Record Vol. 3 at 000715.)

On June 16, 2004, Western Wireless filed a Petition for Rehearing, Reargument, or Reconsideration ("Petition"), which included arguments that imposing an "affordability" requirement is rate regulation prohibited under 47 U.S.C. § 332(c)(3)(A). That Petition was considered only by Commissioners Sopkin and Page. Apparently Commissioner Carl Miller had replaced Commissioner Dyer and did not participate in reconsideration of the Decision. Commissioner Page voted to deny the Petition in its entirety while Chairman Sopkin voted to grant the Petition on Western Wireless' arguments that the Commission did not have authority to require a showing of affordability or impose quality of service standards as a condition to the grant of ETC status. (Record Vol. 3 at 000756-775.) There being no majority in favor, the Petition was denied on July 9, 2004. Commissioners Page and Sopkin issued separate Statements of Position.

In rejecting Western Wireless' Petition, Commissioner Page stated that because the Commission did not require Western Wireless to file its rates or terms and conditions of service in a tariff filing, and was "merely requiring it to provide us with its initial rates to determine whether it is offering basic universal service at just and affordable rates as § 254(i) instructs," the Commission was not engaged in rate regulation. (Record Vol. 3 at 000770.) Commissioner Page also rejected Western Wireless' argument that the Commission exceeded its authority by imposing customer service and service quality conditions on granting its ETC status, relying on the Memorandum Opinion and Order of *In the Matter of Federal-State Joint Board on Universal Service, Virginia Cellular, LLC Petition for Designation as an Eligible Telecommunications*

9

*Carrier in the Commonwealth of Virginia,* 19 F.C.C.R. 1563 ( 2004).

Chairman Sopkin concluded the law was clear that the Commission could not regulate wireless rates and "a state commission's ability to reject 'unaffordable' rates is rate regulation." (Record Vol. 3 at 000761.)  In a departure from his original opinion on service quality, he agreed with Western Wireless' arguments that it is improper and unwise to regulate the service quality of Western Wireless' offerings, and Western Wireless' offer in its Petition to abide by the CTIA Consumer Code as a condition of ETC designation was sufficient. (Record Vol. 3 at 000765-766.)

## Discussion

In Count I Western Wireless claims the Commission is regulating rates and has no authority to do so because of Federal law preemption in 47 U.S.C. § 332(c)(3)(A).

Section 214(e)(2) grants the Commission authority to designate ETCs if the requirements of § 214(e)(1) are met and, for an area that is already served by a rural telephone company, if the designation is in the public interest. Section 254(i) states that the FCC and "the States should ensure that universal service is available at rates that are just, reasonable, and affordable." Section 332(c)(3)(A) of Title 47 states:

> **(3) State preemption**
>
>   (A) . . . no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services.  Nothing in this subparagraph shall exempt providers of commercial mobile services (where such services are a substitute for land line telephone exchange service for a substantial portion of the communications within such State) from requirements imposed by a State commission on all providers of telecommunications services necessary to ensure the universal availability of telecommunications at affordable rates.

> Notwithstanding the first sentence of this subparagraph, a State may petition the Commission for authority to regulate the rates for any commercial mobile service and the Commission shall grant such petition if the State demonstrates that –
>
>> (i) market conditions with respect to such services fail to protect subscribers adequately from unjust and unreasonable rates or rates that are unjustly or unreasonably discriminatory; or
>>
>> (ii) such market conditions exist and such service is a replacement for land line telephone exchange service for a substantial portion of the telephone land line exchange service within such State.
>
> The Commission shall provide reasonable opportunity for public comment in response to such petition, and shall, within 9 months after the date of its submission, grant or deny such petition. If the Commission grants such petition, the Commission shall authorize the State to exercise under State law such authority over rates, for such periods of time, as the Commission deems necessary to ensure that such rates are just and reasonable and not unjustly or unreasonably discriminatory.

In this case, the defendants contend the conditions that Western Wireless must price its services in accordance with Attachment 7 to the Stipulation and must submit its pricing plans for Commission approval were necessary to ensure that the rates charged are "just, reasonable and affordable" under § 254(i), ETC designation is in the "public interest" under § 214(e), and rates are not discriminatory. That is a policy decision which the Commission may make but to implement it the Commission must follow the procedures prescribed by § 332(c)(3)(A). Under Section 332(c)(3)(A) and the corresponding regulation at 47 C.F.R. § 20.13 states may regulate rates to ensure they are just, reasonable, or nondiscriminatory.

Under Section 332(c)(3)(A), in order to regulate rates, a state must petition the FCC for authority to do so. The regulations implementing that statute provide the petition must include:

>    (1) Demonstrative evidence that market conditions in the state for commercial mobile radio services do not adequately protect subscribers to such services from unjust and unreasonable rates or rates that are unjustly or unreasonably discriminatory . . . [or]
>
>    [(2) . . . ] [D]emonstrative evidence showing that market conditions for commercial mobile radio services do not protect subscribers adequately from unjust and unreasonable rates, or rates that are unjustly or unreasonably discriminatory, and that a substantial portion of the commercial mobile radio service subscribers in the state or a specified geographic area have no alternative means of obtaining basic telephone service. This showing may include evidence of the range of basic telephone service alternatives available to consumers in the state.

47 C.F.R. § 20.13(a)(1).   The petitions must also "identify and describe in detail the rules the state proposes to establish if the petition is granted." *Id.* at § 20.13(a)(4).

Under 47 C.F.R. § 20.13( a)(2), evidence to be provided by the state to support the petition may include:

>    (i) The number of commercial mobile radio service providers in the state, the types of services offered by commercial mobile radio service providers in the state, and the period of time that these providers have offered service in the state;
>
>    (ii) The number of customers of each commercial mobile radio service provider in the state; trends in each provider's customer base during the most recent annual period or other data covering another reasonable period if annual data is unavailable; and annual revenues and rates of return for each commercial mobile radio service provider;
>
>    (iii) Rate information for each commercial mobile radio service provider, including trends in each provider's rates during the most recent annual period or other data covering another reasonable period if annual data is unavailable;
>
>    (iv) An assessment of the extent to which services offered by the commercial mobile radio service providers the state proposes to regulate are substitutable for services offered by other carriers in the state;
>
>    (v) Opportunities for new providers to enter into the provision of competing services, and an analysis of any barriers to such entry;

      (vi) Specific allegations of fact (supported by affidavit of person with personal knowledge) regarding anti-competitive or discriminatory practices or behavior by commercial mobile radio service providers in the state;

      (vii) Evidence, information, and analysis demonstrating with particularity instances of systematic unjust and unreasonable rates, or rates that are unjust or unreasonably discriminatory, imposed upon commercial mobile radio service subscribers.  Such evidence should include an examination of the relationship between rates and costs.  Additionally, evidence of a pattern of such rates, that demonstrates the inability of the commercial mobile radio service marketplace in the state to produce reasonable rates through competitive forces will be considered especially probative; and

      (viii) Information regarding customer satisfaction or dissatisfaction with services offered by commercial mobile radio service providers, including statistics and other information about complaints filed with the state regulatory commission.

The state bears the burden of proof and interested parties may file comments after public notice of the state's filing of a petition.  If the petition is granted, the FCC will authorize the state to regulate rates only for a reasonable period of time.  *Id.* at § 20.13(5)-(7); 47 U.S.C. § 332(c)(3)(A).

Here, the Commission has not only failed to follow the prescribed procedure but also arbitrarily and capriciously imposed an "affordability" review without setting forth any standards or criteria for its determinations.  The Commission's conditions constitute rate regulation contrary to the Act.  It had no authority to do so.

In Count II Western Wireless alleges that the Commission has no authority to regulate interstate services.  The defendants do not disagree but argue that ETC services are subject to Commission oversight.  Because interstate and intrastate services are not separable by wireless service carriers in the competitive market they serve, the Commission's position that it is not regulating interstate services is not tenable.

In Counts III and IV, Western Wireless challenges the quality of service standards imposed by the Decision because the requirements conflict with section 214(e)(1), conflict with the FCC's pronouncement in *In the Matter of Federal-State Joint Bd. on Univ. Serv.*, 12 F.C.C.R. 8776 (1997), effectively change Western Wireless' regulatory status to that of an incumbent local exchange carrier, and fail to comply with section 254(f).  Section 254(f) allows states to "adopt regulations not inconsistent with the Commission's [FCC] rules to preserve and advance universal service" and to "adopt regulations to provide for additional definitions and standards. . . ."

Although § 332(c)(3)(A) prohibits a state from regulating the entry of or rates charged by carriers such as Western Wireless, it does not prohibit "a State from regulating the other terms and conditions of commercial mobile services," as recognized by the FCC in its recent 2005 Report and Order, *supra* at 6384-6385, ¶31.

In that Report, the FCC adopted minimum requirements for a telecommunications carrier to be designated as an ETC where the FCC acts to designate pursuant to section 214(e)(6).  One such requirement is for an applicant to demonstrate that it will satisfy consumer protection and service quality standards, which the FCC concluded was not inconsistent with section 332 of the Act:

> While Section 332(c)(3) of the Act preempts the states from regulating rates and entry of CMRS providers, it specifically allows states to regulate the other terms and conditions of commercial mobile radio services.  Therefore, states may extend generally applicable, competitively neutral requirements that do not regulate rates or entry and that are consistent with sections 214 and 254 of the Act to all ETCs in order to preserve and advance universal service.

*Id*. at 6384-6385, ¶31.  The guidelines established in the 2005 Report and Order are not binding

14

on the states and the FCC declined to mandate that state commissions adopt the FCC requirements for ETC designations. *Id.* at 6397-6398, ¶61. The FCC encouraged states that exercised jurisdiction over ETC designations under § 214(e)(2) to impose the same requirements.

While the Commission may impose quality of service standards which do not constitute a barrier or condition to entry precluded under § 332(c)(3)(A), such standards may only be imposed through regulations adopted under § 254(f) and following the rule-making procedures under C.R.S. §§ 24-4-101 *et seq.* (State Administrative Procedure Act) ("Colorado APA"). Section 254(f) provides:

> A State may adopt regulations not inconsistent with the Commission's rules to preserve and advance universal service. Every telecommunications carrier that provides intrastate telecommunications services shall contribute, on an equitable and nondiscriminatory basis, in a manner determined by the State to the preservation and advancement of universal service in that State. A State may adopt regulations to provide for additional definitions and standards to preserve and advance universal service within that State only to the extent that such regulations adopt additional specific, predictable, and sufficient mechanisms to support such definitions or standards that do not rely on or burden Federal universal service support mechanisms.

Under the Colorado APA, the Commission is required to give notice of its proposed rule-making, provide the terms or substance of the proposed rule, and hold a public hearing where interested persons may submit their views or otherwise participate. C.R.S. § 24-4-103. The rules promulgated must be based on and supported by the record, which includes a record demonstrating a need for the regulation, that proper statutory authority exists for the regulation, and that the regulation does not conflict with any other provisions of law. C.R.S. § 24-4-103(4)(b). Applying such procedures ensures the requirements of § 254(f) are met. In the absence of adopted regulations which set forth the applicable quality of service standards, such

standards cannot be imposed.

The plaintiff's claim under 42 U.S.C. § 1983 is that the conditions imposed violate the Act and that issue has been resolved. To the extent that Western Wireless is claiming a property right protected by the Fourteenth Amendment to the U.S. Constitution, the right is created by the Act and is, therefore, co-extensive with the foregoing analysis. Accordingly, the § 1983 claim is redundant.

The court declines to exercise supplemental jurisdiction as to Count VI alleging the Commission exceeded its authority under C.R.S. §§ 40-1-103 and 40-15-401. That claim raises novel or complex issues of state law and requires the interpretation of Colorado statutes that must be decided under the procedures for judicial review of agency action set forth in C.R.S. § 40-6-115 and C.R.C.P. 106. Upon the foregoing, it is

ORDERED, ADJUDGED and DECREED that the conditions imposed in the Decision of May 26, 2004 that WWC Holding Co., Inc. submit the pricing plans it intends to offer for Commission approval is preempted under 47 U.S.C. § 332(c)(3)(A) and the Commission is enjoined from enforcing this requirement as a condition to designating WWC Holding Co., Inc. as an eligible telecommunications carrier under the Act; it is

FURTHER ORDERED, ADJUDGED and DECREED that the Commission's Decision conditioning the ETC designation on compliance with the WWI Stipulation constitutes unlawful regulation of WWC Holding Co., Inc. as an interstate carrier and the Commission is enjoined from enforcing this requirement as a condition to designating WWC Holding Co., Inc. as an eligible telecommunications carrier under the Act; it is

FURTHER ORDERED that Count VI based on violation of Colorado law is dismissed without prejudice; and it is

FURTHER ORDERED that these rulings are all the relief that can be granted to the plaintiff in this civil action and the Clerk shall enter final judgment for the plaintiff.

Dated: March __8th____, 2006.

BY THE COURT:

s/ Richard P. Matsch
Richard P. Matsch, Senior District Judge